UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Tommy W. Rice,<br><br>Petitioner,<br><br>v.<br><br>United States of America<br><br>Respondent. | : | CASE NO. 5:05-cr-00042<br><br>OPINION & ORDER<br>[Resolving Doc. Nos. 67, 72, 74, 76, & 79] |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Petitioner Tommy W. Rice moves *pro se* under 28 U.S.C. § 2255 to vacate his sentence. [Doc. 67; 74.] Petitioner seeks relief from his conviction for possession with the intent to distribute cocaine. The government opposes the petition. [Doc. 72.]

Magistrate Judge James S. Gallas recommends that this Court deny the petition without an evidentiary hearing. [Doc. 76.] Petitioner objects to the Magistrate Judge's Report and Recommendation. [Doc. 79.] For the following reasons, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** the Petitioner's motion.

**I. Background**

On September 5, 2006, following a jury trial, this Court entered judgment against Petitioner Rice on one count of possession of cocaine with intent to distribute (21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)). The Court sentenced Petitioner to 240 months of incarceration. Petitioner pursued a counseled unsuccessful appeal to the Sixth Circuit. [Doc. 63.] As set forth by the Sixth Circuit:

> Akron Police Officers were dispatched to a local hotel because a man - later identified as Rice - had locked the door to a foyer outside Rooms 521 and 522, denying access to both rooms, and had locked himself inside Room 522. The hotel manager had requested Rice to unlock the foyer door, but Rice had refused. Using bolt cutters, the manager had gained access to the foyer and tried to talk to Rice, who had then threatened him. When the police attempted to persuade Rice to leave the room, he became agitated and shouted through the closed door that the police would have to kill him and that the police were devils. A woman named Carla Thomas, who was the registered occupant of the hotel room, and a man purporting to be Rice's uncle[, Avondi Rice,] were also unsuccessful at persuading him to leave the room.
>
> While officers were attempting to negotiate with Rice, Akron Police Sergeant Mostar positioned himself in the adjacent hotel room, Room 521, and periodically walked out onto that room's balcony in an attempt to observe the activity in Room 522. During one of those trips to the balcony, Mostar looked over the railing and saw a dark bag lying in the street, directly beneath Rooms 521 and 522, which he had not seen there previously. As Police Lieutenant Edwards was retrieving the bag from the street, a backpack fell to the ground a few feet from the bag, also directly beneath Rooms 521 and 522. The first bag - a blue duffel bag - contained a number of plastic bags containing various amounts of cocaine, one plastic bag containing marijuana, three scales, and a large quantity of loose cocaine. The backpack contained, among other things, $59,940 in cash, a composition notebook, and three certified letters addressed to Rice. Both bags contained clothing, some still in its original packaging, which matched packaging later discovered in Room 522.
>
> Eventually, Rice exited the hotel room, smoking a marijuana cigarette, and was immediately arrested and taken into custody. Officers found on his person: $6,214 in cash, a day planner, electronic keys to Room 522, and a receipt from Office Max evidencing purchase of a day planner and a composition notebook.

[Doc. 63 at 1-3.] The Court denied Rice's motion to suppress all evidence seized pursuant to his arrest. The Sixth Circuit affirmed that denial and affirmed Rice's conviction. [Doc. 63.]

In support of his Section 2255 petition, Petitioner argues that his trial counsel was constitutionally ineffective in the following ways: "by failing to competently litigate a meritorious Fourth Amendment claim"; "by failing to investigate, interview, or subpoena three critical defense witnesses and one potential suspect, and by failing to timely investigate the delivery records of the certified letters found in the black backpack"; "by failing to object to the government's false

evidence"; "by failing to inform Rice that he would qualify, under 21 U.S.C. § 851, for a statutory sentencing enhancement if he declined the government's plea offer and was found guilty at trial"; "by promising Rice and the court that witnesses would be called to testify at trial"; and "by failing, before trial, to examine the physical evidence found in the two bags, by failing to admit to the jury that Rice possessed the black backpack inside room 522, and by failing to argue to the jury that the blue duffel bag containing cocaine and marijuana had no connection to the black backpack, Rice, or Room 522." [Docs. 67; 74; 79.]

## II. Legal Standard

### *A. 28 U.S.C. § 2255 Petition*

To warrant relief under Section 2255, a defendant must show an error of constitutional magnitude that had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Relief is warranted only where a defendant has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

### *B. Ineffective Assistance of Counsel*

To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient, and (2) this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

A defendant's counsel performs deficiently when counsel's performance falls short of the norms of the legal profession. *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). In ineffective assistance of counsel habeas claims, the court's review of counsel's conduct is highly deferential and "indulge[s] a strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance." *Whiting v. Burt*, 395 F. 3d 602, 616 (2005) (citing *Strickland*, 466 U.S. at 689). Thus, the burden falls upon the defendant to demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

A defendant establishes prejudice by showing a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. Defendant must demonstrate that counsel was so ineffective that defeat was "snatched from the jaws of victory." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (citing *Morrow*, 977 F.2d at 229).

"[W]here there is a factual dispute, the habeas court must hold an evidentiary hearing to determine the truth of the defendant's claim." *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999).

## III. Analysis of § 2255 Petition

*A. Ground One: Counsel failed to competently litigate a meritorious Fourth Amendment claim.*

Allowing some latitude for the *pro se* Petitioner, Petitioner arguably asserts Fourth Amendment claims for constructive arrest, constructive entry, and involuntary abandonment.

On the issue of constructive arrest, the Court rejected Petitioner Rice's argument that the police seized Rice at 5:51 p.m. when the police first arrived at the hotel. [Doc. 21 at 9.] Petitioner says that his trial counsel should have argued that the police "seized" him at 7:06 p.m. when the SWAT team surrounded the hotel room, rather than earlier at 5:51 p.m. when the police merely intended to escort Petitioner from the hotel rather than arrest him. [Doc. 67-1 at 12.]

Petitioner's counsel first raised this 7:06 p.m. constructive arrest argument on appeal. [Doc. 72-2 at 30-31.] Therefore, counsel waived the argument. *See* *United States v. Lopez-Medina*, 461 F.3d 724, 738 (6th Cir. 2006). Additionally, counsel did not argue on appeal that the appellate court

should exercise its discretion for plain error review on this theory, *see* *Lopez-Medina*, 461 F.3d at 739; *Critton*, 43 F.3d at 1094, and did not file a supplemental pretrial motion to suppress on this theory, *see* *Lopez-Medina*, 461 F.3d at 737; *United States v. Worthington*, 698 F.2d 820, 824 (6th Cir. 1983). Thus, counsel waived Petitioner's constructive arrest argument.

Petitioner Rice's counsel did not provide inadequate assistance under *Strickland*, however, because counsel's alleged deficiency did not affect the outcome of the trial. On appeal, the Sixth Circuit determined that the police had probable cause to arrest Rice for criminal trespass. [Doc. 63 at 4.] In a Section 2255 motion, a Petitioner cannot re-litigate an issue raised and litigated on direct appeal absent exceptional circumstances. *See* *DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996). Consequently, counsel's failure to assert the constructive arrest argument at trial did not affect the Sixth Circuit's appellate finding of probable cause, which was clearly supported by the undisputed facts.

On the issue of constructive entry, Rice says that his counsel failed to argue at trial that, by forcing him to leave his hotel room, the police constructively entered the room without a warrant or exigent circumstances. *See* *United States v. Morgan*, 743 F.2d 1158, 1161 (6th Cir. 1984) ("Absent exigent circumstances, police officers may not enter an individual's home or lodging to affect a warrantless arrest or search."); *see also* *Hoffa v. United States*, 385 U.S. 293, 301 (1966) (Fourth Amendment protects hotel rooms). Constructive entry in the absence of exigent circumstances occurs when coercive police conduct is such that the "[d]efendant reasonably believed that he had no choice but to comply." *United States v. Thomas*, 430 F.3d 274, 277 (6th Cir. 2005). Federal courts have justified entry on exigent circumstances grounds when immediate police action was necessary to prevent the destruction of vital evidence or thwart the escape of known criminals. *Ewolski v. City*

*of Brunswick*, 287 F.3d 492, 501 (quoting *Hancock v. Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1992).

Here, too, Rice's counsel did not raise the lack of exigent circumstances argument until appeal, thereby waiving it. [Doc. 72-2 at 31-35.] But Rice cannot show prejudice because both this Court and the Sixth Circuit found that Petitioner voluntarily surrendered in response to his counsel's urging, rather than in response to coercive police conduct. And Rice is estopped from relitigating that finding. *See DuPont*, 76 F.3d at 110-11.

Furthermore, exigent circumstances existed, so counsel's failure to raise the lack of exigent circumstances at trial was neither deficient nor prejudicial. The police reasonably believed that Petitioner Rice posed a threat to them. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). Petitioner had previously shown a willingness to fire weapons, and police had reason to believe that he might have a gun. Consequently, counsel's representation was not deficient for failing to make a futile argument.

Finally, on the issue of involuntary abandonment, Petitioner says that he would have succeeded in his motion to suppress evidence collected from the hotel room and from inside the two bags had his counsel argued that the SWAT team unlawfully seized Petitioner at 7:06 p.m. *See Fletcher v. Wainwright*, 399 F.2d 62, 64 (5th Cir.1968) (finding that police illegally entered arrestee's hotel, so jewelry thrown out window when police kicked in door was involuntarily abandoned and fruit of poisonous tree). As explained above, however, probable cause and exigent circumstances justified the police entry. Thus, Petitioner's counsel did not perform deficiently in failing to raise a meritless involuntary abandonment argument.

Consequently, there is no merit to Petitioner's argument that counsel was ineffective in failing to competently litigate any Fourth Amendment claim.

*B. Ground Two: Counsel failed to investigate, interview, or subpoena three critical defense witnesses and one potential suspect and to timely investigate the delivery records of the certified letters found in the black backpack.*

Petitioner Rice claims that his counsel did not provide him effective assistance by failing to investigate, interview, or subpoena four individuals and failing to timely investigate the delivery records of the certified letters found in the backpack that fell to the ground under his hotel room.

*1. Attorney Donald Walker*

Petitioner says that attorney Donald Walker owned the blue duffel bag found below his hotel room's balcony, and his trial attorney should have called Walker as a witness. As one of the officers moved towards the duffel bags on the street outside the hotel room window, a car stopped by the bags and someone exited the vehicle toward the bags. [Doc. 67-1 at 6.] The police told them not to approach the bags so the automobile departed. The officer provided a license plate number which traced back to attorney Donald Walker, an older African-American man. [Doc. 72-1 at 4] By contrast, the occupants of the automobile had been young, Caucasian males. Moreover, the officer admitted that he may have gotten the license plate wrong. As a result, police rejected Walker as a suspect. Rice's counsel says that the only time he heard of attorney Donald Walker was related to license plates.

Petitioner says that his trial counsel erroneously refused to call Walker because he believed that "calling him to testify would ultimately hurt our case because the jury would certainly find him more credible, being an accomplished attorney, than our other witnesses." [Doc. 67-1 at 21] But, as in this case, when a petitioner's discontent is focused on tactical decisions regarding which witnesses to call, we look at counsel's performance with especially great deference. *See United States v.*

*Morrow*, 977 F.2d 222, 229-30 (6th Cir.1992). By their very nature, trials involve hundreds of tactical decisions. Almost never can we predict what effect any decision will have. And even if we assume Petitioner's version of the events are true, his trial attorney's decision to not call Walker to testify was not deficient performance.

*2. Uncle Avondi Rice*

Next, Petitioner Rice says his trial counsel was deficient by failing to offer the potentially exculpatory testimony of Petitioner's uncle, Avondi Rice. Uncle Avondi Rice has given two versions of the story. [Doc. 67-2 at 54-58.] His first version implicates "Mitchell", an unknown third-party, as owner of the bags and drugs.

Uncle Avondi Rice's second version says attorney Donald Walker brought the blue duffel bag to the hotel room, supplied marijuana from the bag, and smoked marijuana with Petitioner and Avondi Rice. In this second version, Avondi Rice says Walker then left the roomand carried the blue duffel bag containing the drugs to room 824, three floors above room 522 and on the same side of the hotel. Then supposedly Walker gave Avondi Rice a gift of some cocaine. In response, Avondi Rice says he offered to help deliver cocaine and left to do so. When he returned, Petitioner Rice called Avondi Rice to tell him the police were outside the room and said that Walker had asked Petitioner Rice to tell Avondi Rice he needed to get the drugs out of the hotel. Avondi Rice says he told Petitioner to throw the black backpack off the balcony to him. Avondi Rice claims he would have testified to these facts had Petitioner Rice's trial attorney had called him as a witness.

Petitioner's trial attorney chose not to use Avondi Rice because his first version of the story, which counsel says is the only version of which he was aware, did not account for the composition notebook and clothing items found in the discarded black backpack and did not explain how Avondi

Rice possessed such a large quantity of cash. Although Avondi Rice's testimony would be exculpatory for Petitioner Rice, his attorney chose not to call Avondi Rice due to the impeachable nature of his testimony. *See Moss v. Hofbauer*, 286 F.3d 851, 867 (6th Cir. 2003) (defendant was not prejudiced by his counsel's failure to interview or call as a witness someone who might have confessed to the crime where "the prosecutor could have thoroughly impeached" the proposed witness and magistrate judge determined that the proposed testimony "lacked credibility"). Thus, despite Avondi Rice's potentially exculpatory testimony, Petitioner's counsel's decision to not call Avondi Rice was reasonable and not deficient.

*3. Certified Letters*

The black backpack found outside the hotel contained three certified letters addressed to Petitioner Rice. The postal service had delivered these certified letters to uncle Avondi Rice's residence. Petitioner Rice says that his trial counsel was constitutionally ineffective when hefailed to obtain postal confirmation that arguably would have shown that Avondi Rice had signed for the letters. Petitioner says that this piece of evidence, in conjunction with Avondi Rice's assertion that he had not yet delivered the letters to Petitioner, supported Avondi Rice's story that the black backpack was his.

Charles Penrod, trial counsel's private investigator, interviewed Avondi Rice on March 10, 2005. In that interview, uncle Avondi Rice said that he had signed for the letters but had not yet given them to Petitioner. [Doc. 67-2 at 60.] However, private investigator Penrod did not request delivery confirmation until April 11, 2005, after the trial had already begun. [Doc. 34.] Penrod confirmed that Avondi Rice had signed for the letters on April 15, 2005, after the trial. [Doc. 67-2 at 61-65.]

Even if counsel could have acted more swiftly, any dilatory trial performance was not prejudicial because Avondi Rice's denial of having delivered the letters to Petitioner was "incredible given that Rice's clothes and composition book were in the backpack, where the letters were found." [Doc. 76 at 31] Indeed, "[t]he evidence that Avondi Rice had signed for the certified letters could not possibly create reasonable doubt in juror's minds. The question was not who accepted the letters at the post office, but whether their presence in the backpack identified its owner." [Doc. 76 at 32] Because the uncle's story was unbelievable and because the jury would likely have found testimony regarding who signed for the letters irrelevant, the trial outcome would not have been different. Thus, Petitioner Rice was not prejudiced.

*4. Carla Thomas*

Petitioner Rice says his trial counsel was ineffective for having failed to call Carla Thomas as a witness. According to Carla Thomas, Rice did not have either the duffel bag or the backpack with him when she drove him to the hotel on December 29, 2004. She did not see him again until January 2, 2005.

Even though Thomas could give testimony that Petitioner did not have the duffel bag or the backpack on December 29, she did not see him in the days before the confrontation with the police. As a result, at best her testimony would only weakly establish that Petitioner Rice did not have these bags immediately before they were thrown out the hotel window. As described, we afford trial attorneys wide latitude in deciding trial strategy. *See Morrow*, 977 F.2d at 229-30. It was within that discretion not to call Thomas, a witness whose testimony could help Petitioner only marginally. Counsel's performance, therefore, was not deficient.

Petitioner also says that Carla Thomas is attorney Donald Walker's niece and that Walker

represented her in a civil action for damages to the hotel room. [Doc. 79 at 25.] Petitioner criticizes his trial counsel's failure to elicit evidence of her relationship with Walker. [Doc. 79 at 25.] Even if accurate, all this shows is that attorney Walker chose to represent his niece in a legal action. These facts do not tend to show that attorney Walker possessed the blue duffel bag or was at the hotel on January 2, 2005. Thus, Counsel's strategic decision not to call Thomas was not deficient or prejudicial.

*5. Girlfriend Shannah Garrett*

Petitioner Rice says his trial counsel should have called his girlfriend, Shannah Garrett. He says that she would have corroborated that uncle Avondi Rice possessed the bags. Responding to this argument, the government says that Petitioner Rice's trial attorney investigated but was unable to contact Garrett. [Doc. 72-1 at 68] Petitioner disputes that his trial counsel investigated Garrett. [Doc. 67-2 at 68]

But no evidence indicates that Garrettattempted to contact Rice's trial counsel or that counsel was aware of what testimony Garrett could supply. And the reasonableness of counsel's decisions depends on what counsel was aware of at the time, rather than in retrospect. *See Bell v. Cone*, 535 U.S. 685, 698 (2002); *Nichols v.U.S.*, 563 F.3d 240, 249 (2009).

Further, nothing in the record suggests counsel's failure to investigate Garrett was deficient. "'[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Hawkins v. Coyle*, 547 F.3d 540, 548 (6th Cir. 2008) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003). "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying heavy measure of deference to counsel's judgements." *Wiggins*, 539 U.S. at 521-22. Here, Garrett was only a possible

lead, and Petitioner Rice does not show that his trial attorney should have anticipated Garrett's potential exculpatory testimony. Thus, Counsel's performance was not deficient.

*C. Ground Three: Counsel failed to object to the government's false evidence.*

Petitioner says that the government presented false evidence to the jury and his trial counsel was ineffective when he failed to object. At trial, the government tried to connect the bags to Petitioner through the items found inside the bags. In room 522, Officer Caprez found an empty wrapper for a pair of Hanes boxer shorts and an empty wrapper for a pair of "Lite" boxer shorts (Exhibits 19 & 20). The officers found certain items of clothing, (Exhibit 13), in the blue duffel bag which the Government tried to connect to the empty boxer wrappers. At trial, counsel successfully objected to the nexus between the boxer wrappers and the clothing.

Nevertheless, the government argued in closing that the clothing in the duffel bag was "consistent" with the wrappers in room 522. [Doc. 67-2 at 93] Petitioner says that counsel was ineffective for failing to object to the government's statement because the pieces of clothing in the blue duffel bag were not the same brand of boxer shorts that came in the wrappers found in room 522. But the items recovered from the bags were admissible and counsel cannot be faulted for not pursuing futile objections, [Doc. 76 at 35]. *See United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990).

Petitioner also says that the government encouraged the jurors not to open Exhibit 13 when Detective Harvey stated that he would not feel comfortable opening it because it was coated with cocaine residue. He contends trail counsel should have objected. [Doc. 67-2 at 84.] Because the bags and their contents were admissible, however, and the jury was free to examine them, it cannot be said that but for counsel's failure to object, the result of the trial would have been different. Thus,

Petitioner was not prejudiced.

*D. Ground Four: Counsel failed to inform Rice that he would qualify, under 21 U.S.C. § 851, for a statutory sentencing enhancement if he declined the government's plea offer and was found guilty at trial.*

Petitioner asserts that he declined the government's plea offer based on his counsel's erroneous advice. The government offered Petitioner a plea agreement of a ten-year sentence plus a five-year supervised release term without enhancement for a prior felony drug conviction. [Doc. 67-2 at 97-98.] When Petitioner declined the plea offer, the government filed an information for a 21 U.S.C. § 851 enhancement for prior conviction. [Doc. 67-2 at 95-98.]

Petitioner says that his trial counsel did not inform him until April 11, 2005, the day trial commenced, that if convicted he faced a twenty-year mandatory sentence. [Doc. 67-1 at 38-39.] And before that time, Petitioner says his trial attorney told him the maximum sentence was fourteen years. According to Petitioner, counsel informed him he was not subject to any enhancements and that he had a "50/50" chance of acquittal.

*Strickland*'s two-part test in the context of plea offers requires a petitioner to show (1) deficient performance due to counsel's mistaken encouragement to reject a plea bargain and (2) actual prejudice: that but for counsel's mistaken advice, a reasonable probability exists that the Petitioner would have accepted the plea offer. *See* *Magana v. Hofbauer*, 263 F.3d 542, 550 (6th Cir. 2001).

Petitioner's argument that he was unaware of the twenty-year maximum sentence is not credible. First, Petitioner knew of the mandatory sentence because the government mentioned the enhanced sentence at Petitioner's detention hearing. [Doc. 4 at 2.] Second, while Petitioner says he

reasonably relied on his trial attorney's advice, *see* *Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003), his counsel affirmatively represents that he discussed both the statutory and guideline sentences that might apply to Petitioner in a variety of circumstances, including trial and plea. Petitioner's naked assertion in light of the record does not create an evidentiary issue. Thus, counsel's performance was not deficient.

*E. Ground Five: Counsel promised Rice and the Court that witnesses would be called to testify at trial but did not then call those witnesses.*

Petitioner points out that in the March 28, 2005 pretrial conference transcript, Rice's trial attorney told the Court that he would call five or six witnesses, more than likely including those who had contact with the hotel room and others to whom Petitioner says he encouraged his trial counsel to speak to. [Doc. 67-2 at 51] Counsel did not later call those witnesses.

Petitioner says he would have accepted the government's plea had counsel not indicated he would call those witnesses. But counsel's statement was not deficient performance such that the Petitioner was prejudiced into rejecting a plea. Trial strategy is fluid, and this Court will not convert Counsel's guess five months before trial that he would "more than likely" call five or six witnesses into deficient performance.

*F. Ground Six: Counsel failed to examine the physical evidence found in the two bags, to admit to the jury that Petitioner possessed the black backpack inside room 522, and to argue to the jury that the blue duffel bag containing cocaine and marijuana had no connection to the black backpack, Petitioner, or room 522.*

Petitioner's trial counsel sought to establish that neither bag belonged to Petitioner, particularly by pointing to some plastic bags containing loose cocaine which had fingerprints that

did not belong to Petitioner. [Doc. 63 at 6-7] Although a separate ownership argument regarding the duffel bag and the backpack would have been "difficult if not impossible," because the officers recovered them in such proximity to one another, [Doc. 76 at 42], Petitioner says that his attorney should have examined both the duffel bag and the backpack to better understand the government's strategy so that he could better explain to Petitioner his chances at trial. [Doc. 79 at 33.]

The trial attorney's failure to examine the bags did not result in any of the harm Petitioner lists. Counsel would have gained little information from visually inspecting the bags and could reasonably rely upon discovery materials rather than personally examining the bags. This failure does not rise to the level of deficiency that would fulfill the first prong of the *Strickland* standard.

**VI. Conclusion**

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's Report and **DENIES** Petitioner's motion.

IT IS SO ORDERED.

Dated: August 12, 2010

*s/ James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE